HUNT et al., Respondents, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, May 28, 1907.

1. DAMAGES: Growing Crop. In an action for the destruction of a growing crop, the measure of damages is the value of the crop destroyed standing in the field at the time it was destroyed.

2. ———: ———: Evidence. In determining the value of a growing crop of corn, in an action for damages for its destruction, evidence of the yield of a similar crop on similar land under similar conditions, and the market value of the corn in the autumn when matured, in connection with evidence of the cost of cultivation, gathering and marketing the crop, is admissible for the purpose of showing the value of the growing crop when destroyed.

3. ———: ———: General Instruction.  In an action for damages an instruction which authorized a verdict for plaintiff in such sum as the plaintiff was damaged is not erroneous where an instruction given for the defendant defined the measure of damages.

Appeal from St. Francois Circuit Court.—*Hon. Chas. A. Killian,* Judge.

AFFIRMED.

*Martin L. Clardy* and *James F. Green* for appellant.

(1)   Plaintiffs' action was one for the destruction of immature crops; the court erred in admitting testimony as to the value of a matured crop.   The measure of damages is the value of the crops at the time they were destroyed.   Hosli v. Yokel, 57 Mo. App. 622; 3 Joyce on Damages, sec. 2126; 1 Sutherland on Damages, 103; Gresham v. Taylor, 51 Ala. 505; Irvin v. Holde, 176 Pa. St. 594; Land Co. v. Hartman, 5 Col. App. 150; Lampley v. Railroad, 63 S. Car. 462; Yarborough v. Railroad, 56 Ark. 612; Lomland v. Railroad, 35 Minn. 412; Emmett v. Railroad, 53 Neb. 237; Young v. Railroad, 13 Am. & Eng. R. R. Cases, 548; Smith v. Railroad, 11 S. W. 123.   (2)   Plaintiffs' instruction on the measure of damages, is in direct conflict with defendant's first instruction.   It is error to give conflicting instructions which furnish no guide to the jury.   Roe v. Bank, 167 Mo. 427; Thumel v. Duke, 82 Mo. App. 55; Frank v. Railroad, 57 Mo. App. 186; Deweese v. Mining Co., 54 Mo. App. 488;   Baker  v.  Railroad,  122 Mo. 596; State v. Cable, 117 Mo. 386; Stevenson v. Handcock, 72 Mo. 612; Redpath v. Railroad, 42 Mo. App. 112; Stone v. Hunt, 94 Mo. 475; Frederick v. Allgaier, 88 Mo. 603.

*R. C. Tucker* and *W. L. Hensley* for respondents.

(1) The instructions given as a whole properly and fairly declare the law applicable to the case. Where a series of instructions, when taken together, contain a complete exposition of the law the cause will not be reversed even though the instructions when taken separately may be incomplete and open to criticism. Hughes v. Railroad, 127 Mo. 447, 453; Owens v. Railroad, 95 Mo. 169, 181; Swafford v. Stratt, 93 Mo. App. 631, 637. (2) If the instruction given at the instance of plaintiff was too general in its terms and if appellant was dissatisfied therewith it was his duty to ask for more explicit instructions and if he did not he cannot complain. Bank v. Ragsdale, 171 Mo. 168; Sherwood v. Railway, 132 Mo. 339; Lane v. Railway, 132 Mo. 4; Ruth v. Railway, 70 Mo. App. 190. (3) The objection of the appellant that the testimony offered by respondent as to the value of the corn destroyed was incompetent is untenable. Land & Town Co. v. Neale, 3 L. R. A. 83.

GOODE, J.—The purpose of this action is to recover for the loss of more than half of twenty acres of growing corn alleged to have been caused by the incursions of hogs into plaintiffs' field through a defective fence along the right of way of defendant's railroad. There is a conflict in the evidence as to whether the hogs entered the field because of a defective fence maintained by the defendant, or because plaintiffs' own fence was in bad repair. This matter was left to the jury on substantial evidence to support the averments of the petition and was determined in plaintiffs' favor. The undamaged part of the field yielded about three hundred bushels of corn, but the replanted part on which the first crop was destroyed, yielded nothing on account of the replanting being too late. Testimony was received from one of the plaintiffs as to how much corn could have been raised on the land but for the destruction wrought

by the hogs, taking into consideration what was actually produced and the character of the season. In answer the witness said he gathered between forty-five and fifty bushels of corn to the acre on the part not rooted over by hogs and thought, but for the devastation, eight hundred bushels would have been raised on the entire tract. This evidence showed a loss of five hundred bushels of corn in consequence of the damage wrought by hogs. The witness was also permitted to testify what the market price of corn was that fall, and what would have been the cost of gathering the crop. He said the market price was fifty-five cents a bushel and that it would have cost seven and one-half cents a bushel to gather the crop and take it to market. When the hogs did the damage the corn was from one and one-half to two inches high; just coming up well. No damage was done after June 10, the fence having been repaired. The foregoing testimony was received for the purpose of assisting the jury to form an opinion as to what the value of the corn was in the field at the time it was destroyed, which was ruled to be the measure of plaintiffs' damages, and so declared in an instruction given at the instance of defendant. This instruction advised the jury that if they found the issues for plaintiffs, they would allow them damages in such amount as they found was the value of the crop destroyed, standing in the field at the time it was destroyed. This was the only instruction given on the measure of damages and, we think, stated the true measure. The question is what was the value of the destroyed corn at the time and place when the trespass happened? This being ascertained, the damages were to be assessed accordingly. A few decisions prescribe other measures of the damages suffered from the destruction of a growing crop, but the great weight of authority is in favor of the rule stated. [8 Am. & Eng. Ency. Law (2 Ed.), 330; 13 Cyc. 208; 4 Sutherland, Damages, 1023; 3 Sedgwick,

Damages (8 Ed.), sec. 937; 3 Joyce, Damages, 2126; Hosli v. Yokel, 57 Mo. App. 622; Railroad v. Emmert, 53 Neb. 237, 243; Irwin v. Nolde, 176 Pa. St. 594, 600; Railroad v. Adams, 63 Tex. 200.] Besides the authorities just cited, those cited *infra* on the two sides of the question of whether the testimony complained of was competent, agree that the measure of damages is the actual value of the growing crop in its condition when and where the loss occurred. A disagreement exists among the decisions as to what facts are available to enlighten the jury as to the actual value; for an immature crop usually has no market value to be used as a criterion of damages. Hesitation has been shown by some courts to admit testimony of the probable yield and market value of the crop had it matured, from a belief that such facts are conjectural and apt to misguide instead of guide the jury. In the present case, as part of the corn was not destroyed but grew to maturity, and as there does not appear to have been any difference in the quality of the land over the entire twenty acres, and as all of it was subject to the same kind of weather and crop conditions generally, we have nearly certain proof of what the destroyed crop would have yielded. By these facts the inquiry is ranged in the practical instead of the speculative sphere. Testimony about the market price of corn that autumn and what it would have cost to gather and market plaintiffs' crop, was let in as tending to show the value of the growing crop when uprooted, and we must determine whether this testimony was reasonably appropriate for the purpose. Such testimony has been rejected occasionally because of its supposed tendency to induce an award of speculative damages. In our opinion knowledge of the market value of a crop when mature and what the owner could have sold it for, has much to do with its value at any stage of growth. Such facts are to be taken in connection with evidence of the cost of cultivating, gathering and marketing the

crop and other items of expense an owner would incur in order to raise and sell his grain. A growing crop of corn is certainly worth more to the owner in the spring of a year when the mature crop brings a high price than in the spring of a year when it brings a low one, and such price ought to be taken into consideration in determining the value of the growing crop, if the action is not instituted too soon. The expression of text-writers on the law of damages on this point are vague, as will be seen by reading the passages cited from them supra. Sutherland says a considerable latitude of inquiry is properly open in ascertaining the value of a crop; citing the case of Lommeland v. Railroad, 35 Minn. 412, in support of the proposition that the capacity of the land to produce, the average yield of similar crops in the neighborhood, the market value of the crop injured within reasonable limits of time, and the expense of harvesting and marketing a like crop, may be shown. The Lommeland case was partly overruled in Ward v. Railroad, 61 Minn. 449. Nevertheless the decision had found favor in other jurisdictions and been followed. We are not sure that the overruling opinion disapproves more of the Lommeland opinion than the portion justifying the admission of testimony to show what the plaintiff's prospects were for a crop ten months in the future, when it appeared that a crop of some character could have been raised on the land in the interim, thus mitigating the loss. In 13 Cyclopedia Law and Procedure, 208, it is said that in an action for growing crops the measure of damages is the "value at the time of their destruction; yet in determining this amount, evidence of the probable yield and the value of the crop had it progressed to maturity, is admissible; and proof of the yield in that part of the field not destroyed, or of the value of matured crops of the variety destroyed, is admissible." Cases are cited in the notes in support of the text, which obviously would render ad-

missible the testimony with which we are dealing. In Joyce's work no effort is made to state a rule, but certain cases are said to hold it was proper to show the number of bales (presumably of cotton) the crop would have matured when ginned and baled, and the market value, less the expense of marketing. [3 Joyce, 2126.] Sedgwick gives no statement of what evidence is competent as proving the value of the immature crop at the time of its destruction. Neither does Field; nor, we believe, the American and English Encyclopedia of Law. In the latter work what is said on the subject will be found on pages 330, 331, Volume 8, and consists chiefly of statements in the notes of the decisions in different cases. The following decisions support, with varying cogency, the competency of such evidence as we have before us. [Colo., etc., Co. v. Hartmen, 5 Colo. App. 150; Railroad v. Lyman, 57 Ark. 512; Railroad v. Ward, 16 Ill. 530; Chicago, etc., Co. v. Schaffer, 26 Ill. App. 280, 283; Economy, etc., Co. v. Cutting, 49 Ill. App. 422, 424; Adams v. Stadler, 78 Ill. App. 432, 434; Scanland v. Musgrove, 91 Ill. App. 184; Railroad v. Borsky, 2 Tex. Civ. App. 545; Railroad v. McGowan, 73 Tex. 355, 362; Railroad v. Pape, 73 Tex. 501, 533; Seamans v. Smith, 46 Barb. 320; Richardson v. Northrup, 66 Barb. 85; Sanderlin v. Shaw, 6 N. C. 225; Payne v. Railroad, 38 La. Ann. 164, 168; Rice v. Whitmore, 74 Cal. 619; Phillips v. Terry, 5 Ab. Prac. (n. s.) 327.] The decisions next cited are more or less opposed to the competency of such testimony. [Horres v. Chemical Co., 57 S. C. 189; Lampley v. Railroad, 63 S. C. 462, 468; Gresham v. Taylor, 51 Ala. 505; Railroad v. Yarborough, 56 Ark. 612, 619.] The case last cited was distinguished and explained in the case of Railroad v. Lyman, 57 Ark., supra, and, in view of the later ruling, is of no authority against the competency of the evidence inasmuch as the rule in Arkansas is now in favor of its reception. We overrule the de-

fendant's exception to the admission of the testimony, and hold it was a proper means of instructing the jury as to the actual value of the crop when it was destroyed and, hence, as to the extent of plaintiffs' loss.

It is said the instruction granted for plaintiffs on the measure of damages is in conflict with that granted for the defendant. No instruction was given at plaintiffs' request on the measure of damages. After stating certain facts to be found to authorize a verdict for plaintiffs, the jury were told that if they found for them it should be in whatever sum plaintiffs were damaged by the hogs, not to exceed the sum asked in the petition. It is obvious that in order to ascertain what rule of damages was prescribed by the court, said instruction must be read in connection with the one requested by the defendant.

We have found no error in the record and the judgment is affirmed. All concur.