PATRICK H. COFFMAN et al., Respondents, v. SALINE VALLEY RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, June 2, 1914.

1. **ASSIGNMENTS: Right of Assignee to Sue: Parties.** A cause of action for the breach of a railroad company's contract to raise a railroad embankment above high water mark, so as to protect adjoining lands from the overflow of a creek, being a chose in action arising out of contract, the assignee of the obligee could sue thereon in his own name, although the assignment was for the mere purpose of collection.

2. ——: ——: ——. Where a chose in action is assigned for collection, the assignor retaining an interest in the right, the assignee is entitled to sue as trustee of an express trust,

under Sec. 1730, R. S. 1909, and, after recovery, he must account to his assignor.

3. ————: ————: ————: **Res Adjudicata.** Where a chose in action is assigned for collection, the assignor retaining an interest in the right, and the assignee sues thereon as trustee of an express trust, under Sec. 1730, R. S. 1909, the obligor is immune from further prosecution on account of the cause of action assigned.

4. **CONTRACTS: Written Contract: Explanation: Parol Evidence.** Plaintiff's assignor conveyed a right of way to defendant railroad company, in consideration of its agreeing to raise the embankment above high water mark, and to permit plaintiff to connect the embankment with other levees, so as to protect plaintiff's adjoining land from the overflow of a creek. In an action for damages for the breach of this contract, *held* that the words, "high water mark," as used in the contract, were not limited to the point at which high water extended when no freshets occurred, and that plaintiff was entitled to show that his assignor and defendant's agent went over the right of way immediately before the contract was signed and ascertained the high water mark by examining its location on certain trees; such evidence not being vulnerable to the objection that it tended to vary the terms of the contract, but being admissible as tending to shed light on the intention of the parties in using ambiguous words.

5. ————: ————: ————: ————. Although parol evidence tending to vary or contradict the terms of a writen contract is incompetent, such evidence is competent to dispel an ambiguity therein, and while, in so doing, it is not competent to introduce direct evidence as to what the parties intended, yet enough of the facts and circumstances surrounding them at the time the contract was made as is essential to place the trier in the situation they occupied may be shown, in order that the trier may be enabled to ascertain their true intention.

6. ————: **Construction: Intention.** The intention of the parties is the thing to be ascertained, in construing a contract which is in dispute.

7. **DAMAGES: Injury to Crops: Measure of Damages.** In an action for injuries to growing crops, the measure of damages is the value of crops destroyed which were standing at the time of the injury.

8. ————: **Injury to Land: Measure of Damages.** Where certain top soil was washed from a large portion of the cultivated land of plaintiff's assignor as a result of defendant's failure to construct a proper railroad embankment pursuant to a contract with plaintiff's assignor, the measure of plaintiff's damage was the

difference between the value of the land before and after the injury.

9. ———: Expenses Incurred in Mitigation: Right of Recovery. Defendant railroad company having contracted with plaintiff's assignor, in consideration of a conveyance of a right of way, to raise its embankment above high water mark, so as to protect his adjoining land, failed to do so, and, as a result, the land was overflowed, and the railroad company's right of way fence dis-,lodged from its position and deposited thereon. When the flood abated, plaintiff's assignor cleared the field of debris and encountered the fence, rolled and tangled together, and, without first giving notice, removed the fence from the field and reset it in position, as necessary to protect his crops from the incursion of cattle from without. *Held*, that plaintiff's assignor properly reconstructed the fence in order to mitigate his damages, and plaintiff was entitled to recover, as an element of damage, the reasonable value of the work of so doing.

10. ———: Mitigation. It is the duty of one injured by the breach of a contract to mitigate the damages, if it is within his power to do so.

11. APPELLATE PRACTICE: Nonprejudicial Error. Under Sec. 2082, R. S. 1909, it is only for such errors as materially affect the merits of the case, against the substantial right of the appellant, that a judgment should be reversed, on appeal.

Appeal from Cape Girardeau Circuit Court.—*Hon. Charles B. Faris*, Judge.

AFFIRMED.

*Giboney Houck, Lane & Alexander* and *Davis & Hardesty* for appellant.

(1) The court erred in assuming that plaintiffs were conclusively shown to be either the real parties in interest or the trustees of an express trust, and also erred in excluding evidence to the contrary. Sec. 1729, R. S. Mo. 1909; Dickey v. Porter, 203 Mo. 1; Chrismann-Sawyer Banking Co. v. Independence Mfg. Co., 168 Mo. 650; Steward v. Price, 64 L. R. A. 581; Sinker v. Floyd, 104 Ind. 291 (see note 64 L. R. A. 621); Bank v. Crump, 116 Mo. App. 376. (2) The court erred in permitting any recovery for damage to

fences. There was no evidence that Pratte ever obtained any interest in the fence, by contract. Nor did he acquire any interest in the fence under the fencing statute. Sec. 3145, R. S. Mo. 1909; Barnett v. Railroad, 68 Mo. 62; Cooley's Con. Lim. 578; Spealman v. Railroad, 71 Mo. 434; Humes v. Railroad, 82 Mo. 221; Phillips v. Railroad, 86 Mo. 540; Hines v. Railroad, 86 Mo. 629; Perkins v. Railroad, 103 Mo. 57; Briggs v. Railroad, 111 Mo. 172. Pratte could invoke the fencing statute only in the manner therein provided. Mangold v. Railroad, 116 Mo. App. 606. Pratte could not divest defendant of and invest himself with defendant's title while acting as defendant's agent. 31 Cyc. 1432-1433; 31 Cyc. 1444-1445; Witte v. Stone, 236 Mo. 470, 139 S. W. 384; Mechanic's Bank v. Schaumburg, 38 Mo. 228; Atlantic Cotton Mills v. Indian Orchard Mills, 17 N. E. 496; Mechem on Agency, sec. 721, 722; Story on Agency, sec. 210. The location, purpose and use of the fence showed clearly that it was a railroad right of way fence and therefore belonged to defendant even though on Pratte's land, it being there with his knowledge and consent. Laclede Gas Light Co. v. Gas Con. Ass'n, 127 Mo. App. 442; Sec. 3145, R. S. of Mo. 1909; 19 Cyc. 1046; Philbrick v. Ewing, 97 Mass. 133; Berliner v. Piqua C. Club, 32 Misc. 470, 66 N. Y. Sup. 791; McGarrick v. Dwyer, 78 Iowa, 279; 5 L. R. A. 594; Thompson v. Smith, 111 Iowa, 7181; 50 L. R. A. 780; Joplin Supply Co. v. West, 149 Mo. App. 78; Matson v. Calhoon, 44 Mo. 368; Gregg v. Railroad, 48 Mo. App. 498; Lowenberg v. Bernd, 47 Mo. 298; Hines v. Ament, 43 Mo. 298; Machin v. Calhoon, 44 Mo. 368. (3) The court applied an improper measure of damages as to the crops. The measure should have been the decrease of the rentals of the fields. It was Pratte's duty to use proper diligence to avert the effect of the injury. 8 Am. & Eng. Ency. of Law, 605-606; Haysler v. Owen, 61 Mo. 270; State ex

rel. v. Powell, 44 Mo. 440; 8 Am. & Eng. Ency. of Law, 607. (4) Applying the settled legal meaning of the term "high-water mark," no breach of the contract by defendant was established. 4 Words and Phrases, p. 3290. (5) The court erred in admitting parol evidence to vary the written contract. Drug Co. v. Saunders, 70 Mo. App. 221; 1 Greenlief on Evidence (16 Ed.), p. 409; 17 Cyc. 684-688. (6) The court erred in permitting witness Scivally to fix the high-water mark on hearsay information. Greenlief on Evidence (16 Ed.), p. 182. (7) The court erred in excluding evidence as to the extraordinary character of the flood of 1910 being the proximate cause of the damage. 8 Am. & Eng. Ency. of Law, 571; 13 Cyc. 25-27. (8) The court erred in modifying defendant's instruction number 11. 13 Cyc. 25-27; 8 Am. & Eng. Ency. of Law, 571. (9) Failure to make or tender conveyance of the right of way precludes recovery by plaintiffs. Kreitz v. Eglehoff, 132 S. W. 1127; 231 Mo. 694; Iola Portland Cement Co. v. Ullman, 140 S. W. 626, 159 Mo. App. 235. (10) The agreement of the Saline Valley Railroad Co. to build its railroad above high-water mark was an executory contract between the company and B. S. Pratte; by the contract Pratte agreed to convey the right of way to the company; this was never done; the contract created only a personal covenant between the railroad company and Pratte, and did not create a covenant running with the land. Railroad v. Smith et al., 9 S. W. 865; Ascher Lumber Co. v. Cornett et al., 63 S. W. 974; Railroad v. Webster, 61 S. W. 1018; Buen v. Hubbell, 54 Mo. App. 624; Dickey v. Railroad, 122 Mo. 230, 231; Sutherland on Damages (3 Ed.), sec. 621; Langenberg v. Dry Goods Co., 74 Mo. App. 19. (11) If the railroad company, as alleged in plaintiffs' petition, breached the contract, by failure to build its track above high-water mark such breach extinguished the covenant between the railroad company and Pratte, and the covenant to build the track

as agreed, was turned into a mere right of action, which could only be taken advantage of by the covenantee or his personal representative; and such right of action neither passes to the heir, devisee or subsequent purchaser. Buren v. Hubbell, 54 Mo. App. 625; Langenberg v. Dry Goods Co., 74 Mo. App. 19.

*Thomas B. Whitledge* and *John V. Noell* for respondents.

(1) There is but one cause of action against it now, as there was prior to the assignment, and the judgment in this case is a complete bar to any further suit by Pratte or his assignees involving the same subject-matter. Gordon v. Jefferson City, 111 Mo. App. 23, 28; Morrison v. De Donato, 76 Mo. App. 643; Petit v. Ins. Co., 69 Mo. App. 320; Savings Bank v. Tracey, 141 Mo. 252. (2) An assignment of a claim for collection is valid under the law. R. S. 1909, Secs. 1729 and 1730; West Plains Bk. v. Edwards, 84 Mo. App. 462; Springfield v. Weaver, 137 Mo. 670; Young v. Hudson, 99 Mo. 102. (3) There is nothing in the contention of defendant's counsel that a cause of action for damages for a breach of contract, such as the contract offered in evidence in this case, is not assignable. Love v. Van Every, 18 Mo. App. 196; Smith v. Kennett, 18 Mo. 154; Snyder v. Railroad, 86 Mo. 613; Doering v. Kenemore, 86 Mo. 589; The Conn. Mut. Life Ins. Co. v. Smith, 117 Mo. 261; Melton v. Smith, 65 Mo. 315; Goodyear v. Finn, 10 Mo. 226. (4) It is now generally held by the courts of this and other States that even a cause of action for damages for injury to or destruction of property, either real or personal, and which does not arise out of contract, is assignable. The distinction made by the courts is between those causes of action which survive and those which die with the person; the courts holding that the former are assignable, while the latter are not. Smith v. Kennett, 18

Mo. 154; Snyder v. Railroad, 86 Mo. 613; Doering v. Kennemore, 86 Mo. 589; Life Ins. Co. v. Smith, 117 Mo. 261, 290-291; Goodyear v. Finn, 10 Mo. App. 226. (5) Where damages are the natural but not the necessary consequence of a breach of contract it is necessary to set them forth in itemized form, in order to advise defendant of the subjects constituting plaintiff's claim of damages. Such damages are designated as special damages. Phillips on Code Pleading, secs. 425 and 427; Vanbuskirk v. Railroad, 131 Mo. App. 357; Mason v. Railroad, 75 Mo. App. 1; Brown v. Railroad, 99 Mo. 310. (6) The jury were correctly instructed in relation to injury or destruction of growing crops belonging to B. S. Pratte in instruction number 3 given for plaintiffs. The trial court in this instruction followed the rulings of this court in relation to damage and destruction of growing crops. Carter v. Railroad, 128 Mo. App. 57; Anderson v. Railroad, 129 Mo. App. 384; Buttles v. Railroad, 43 Mo. App. 280; Hunt v. Railroad, 126 Mo. App. 261. (7) The controlling rule as to damages resulting from a breach of contract is that one injured by such breach must be fully compensated for all losses sustained by him in consequence of such breach. Hammond v. Beeson, 112 Mo. 197; Railroad v. Wingerter, 124 Mo. App. 434; Carter v. Railroad, 128 Mo. App. 57; Rogan v. Railroad, 51 Mo. App. 675. (8) The cardinal rule in the interpretation of a contract is to arrive at and carry out the true meaning and intention of the parties. The Huse, etc., Ice & Trans. Co., 102 Mo. 245; Carter v. Arnold, 134 Mo. 195; Ellis v. Hamison, 104 Mo. 270; Davis & Rankin v. Hendrix et al., 59 Mo. App. 444; Donovan v. Boeck. 217 Mo. 70. (9) In case of uncertainty or ambiguity in the terms of a contract the court should take into consideration the circumstances surrounding the execution of the contract, the objects and purposes of the contract, and the acts and declarations of the parties made contemporaneously with

the execution of the contract. Hence, the acts and declarations of Louis Houck representing the defendant and those of B. S. Pratte made and done immediately preceding the execution of the contract were admissible in evidence to explain the meaning of the term, "high-water mark" as used in the contract. Laclede Construction Co. v. Moss Tie Co., 185 Mo. 25; Nordyke & Marmon Co. v. Kehlor, 155 Mo. 644; Inlow v. Bybee, 122 Mo. App. 475; Pietri v. Seguenot, 96 Mo. App. 259; Ellis v. Harrison, 104 Mo. 270; Davis & Rankin v. Hendrix et al., 59 Mo. App. 444. (10) The right to recover damages for breaches of the contract occurring while B. S. Pratte owned the land did not pass by his deed to plaintiffs, but remained his personal property until his assignment to plaintiffs of August 10, 1910. Turner v. Railroad, 130 Mo. App. 535; Lucas v. Railroad, 116 Mo. 114; Whitecotton v. Railroad, 104 Mo. App. 65. (11) The plaintiffs had a right to recover damages for injury to the land as well as for injury and damage to crops and fences, and instructions number 4 and number 5 given for plaintiff stated the correct rule of estimating such damages, namely, the difference in the market value of the injured land before and after the injury. Carter v. Railroad, 128 Mo. App. 61; Wiggins v. Railroad, 119 Mo. App. 492. (12) As the written contract entered into between defendant and B. S. Pratte did not specify the time when defendant's embankment should be built to high-water mark, the law implied that it should be done within a reasonable time. Koerper v. Royal Inv. Co., 102 Mo. App. 543; Lapsley v. Howard et al., 119 Mo. 489; Godfrey v. Stock, 116 Mo. 403; Manley v. Crescent Novelty Mfg. Co., 103 Mo. App. 140; Turner v. Snyder, 132 Mo. App. 320; Moss v. King, 212 Mo. 578; Althopp v. Transit Co., 204 Mo. 166; Mount Calvary Church v. Albers, 174 Mo. 343. And what is a reasonable time is usually a question for the jury; but the time may be so short that the court may declare it reasonable, or

so long that the court may declare it unreasonable as a matter of law. Manley v. Cres. Nov. Mfg. Co., 103 Mo. App. 140; Tower v. Pauly, 51 Mo. App. 83; Skeen v. Springfield Engine & Thresher Co., 34 Mo. App. 496; Rubber Co. v. Rubber Co., 74 Mo. App. 271; Johnson v. Whitman Agricultural Co., 20 Mo. App. 102.

NORTONI, J.—This is a suit for damages accrued on account of a breach of contract. Plaintiffs recovered and defendant prosecutes the appeal.

The damages sued for were occasioned by means of the overflow of certain fields whereby crops were destroyed and certain top soil washed from a portion of the cultivated lands. Besides this, there is a question made with respect to a right to recover compensation for rebuilding a fence which it appears belonged to defendant, but was washed over upon plaintiffs' cultivated lands.

The lands overflowed are situated adjacent to Saline creek. Plaintiffs' vendor and assignor, Bernard S. Pratte, formerly owned these lands and, on the 28th day of August, 1905, entered into the written contract with defendant railroad company which is here sued upon. By this contract, Pratte agreed to convey to the railroad company a right of way for its railroad across such lands along and adjacent to Saline creek, and in consideration therefor defendant railroad company agreed and undertook to construct a solid embankment along the line referred to in the contract for its railroad, which was to be built above high-water mark so as to protect the lands from overflow, and Pratte was accorded the right to join certain other levees thereto. The contract authorized the railroad company to take immediate possession of the right of way referred to, for the purpose of constructing its railroad thereon, and this it did. The railroad was completed some time in the year 1906, but it appears

the embankment was not built as required by the contract—that is, up to the high-water mark. On the contrary, the evidence tends to prove that it was built several feet below that, and because of this, the overflow from Saline creek passed over the railroad embankment in the spring of 1910 and inundated Pratte's fields, so as to destroy his growing crops thereon and to wash away a considerable amount of the top soil on a portion of his land. Among other things, this flood dislodged and removed a large portion of the railroad right of way wire fence from its position, rolled it up, and deposited it in the fields. In order to protect his remaining crops and possessions and to the end of mitigating damages thereto, Pratte removed the fence from where it was deposited in the fields on his lands and rebuilt it along the right of way, at an expenditure of about $260. One of the items of damages sued for relates to this matter.

By a general warranty deed, dated on the 25th day of July, 1910, Bernard S. Pratte and wife, with whom the contract was originally entered into by defendant, conveyed the lands involved to plaintiffs, Patrick H. Coffman, Augusta C. Rond and Robert A. Brown. Although this deed is of date July 25, 1910, it appears to have been acknowledged and delivered on the following day—that is, July 26, 1910—and on the same day Pratte, the grantor, assigned the contract here sued upon to these plaintiffs. From this it appears that plaintiffs succeeded to both the title of Pratte and wife in the lands and to his rights under the contract as well. A couple of weeks afterward—that is to say, on the 10th day of August, 1910—Bernard S. Pratte formally executed to plaintiffs a written assignment of his right of action for damages, past, present and future, and for such damages as had accrued to him against defendant on account of the breach of said contract, and all rights of action thereunder or thereabout, to these plaintiffs. Plaintiffs thereupon insti-

tuted this suit for damages, and, as before said, recovered against defendant as for a breach of the contract, in that, though it had constructed its railroad and embankment in 1906, it wholly failed to erect the embankment, as required by the contract, above the high-water mark along Saline creek, and because of this the fields were inundated through an overflow from the creek and the damages sued for suffered.

It appears that, though Pratte assigned his right of action for all damages suffered by the overflow and because of the breach of the contract to construct a solid embankment above the high-water mark to these plaintiffs, as above stated, he retains some interest in the proceeds of the recovery. What his interest therein is does not definitely appear, but the case concedes that he is still interested therein in some amount.

It is first argued the judgment should be reversed for the reason the suit is not brought in the name of the real party in interest. The suit proceeds in the name of the three plaintiffs who succeeded to Pratte's rights in the lands by virtue of his deed and who succeeded to the right of action for damages under the written assignment thereof above described. Obviously there is no merit in this argument, for the subject-matter of the assignment is a mere chose in action arising out of contract, and the assignee may sue thereon, though the title were passed to him for no other purpose than that of collection. Moreover, if Pratte is interested in a portion of the recovery, these plaintiffs are to be regarded as the trustees of an express trust under the code provision, and the suit is properly brought by them, and it remain for them to account to Pratte. Defendant is immune from further prosecution on account of the same cause of action as that involved in the assignment here. [See West Plains Bank v. Edwards, 84 Mo. App. 462; Young v. Hudson, 99 Mo. 102, 12 S. W. 632; Springfield, to use, v. Weaver, 137 Mo. 650, 37 S. W. 509, 39 S. W. 276.]

The contract sued upon stipulates that "the railroad shall be built above the high-water mark." Plaintiffs introduced evidence tending to show the situation of the land, its liability to overflow from Saline creek, and the point regarded in the community as high-water mark. Among other things, they were permitted to show that defendant's agent, together with plaintiff, went over the right of way immediately before the contract was signed and ascertained the high-water mark by examining the same on certain trees where such high-water mark was pointed out and located. It is argued this evidence was incompetent, in that it tended to vary the terms of a written contract, for it is said the meaning of the words "high-water mark" indicates the point at which high water reaches when no freshets occur. But we are not persuaded to this view. The court received this evidence and submitted the question of the high-water mark to the jury on the theory that these words in the contract imported some ambiguity. There was no error in this, for though it be true that one may not introduce parol evidence to vary or contradict the terms of a written contract, he may do so to dispel an ambiguity therein. But in so doing, it is, of course, not competent to give evidence directly as to what the parties intended. However, enough of the facts and circumstances surrounding the parties at the time the contract was made may be shown as is essential to place the court and jury in the situation they then occupied and thus indue the tribunal trying the fact with the knowledge possessed by the contracting parties in order to ascertain the true intention. The intention of the parties is the matter to be sought for in giving judgment upon every contract in dispute, and to ascertain this it is frequently essential to consider the surrounding facts and circumstances as introduced in evidence here. [See Ellis v. Harrison, 104 Mo. 270, 16 S. W. 198; Laclede Const. Co. v. Moss Tie Co., 185 Mo. 25, 62, 84 S. W.

76.] In this connection it is to be said the circumstances under which the contract is made and the object in view should be considered in giving meaning to doubtful terms. [See Nordyke, etc. Co. v. Kehlor, 155 Mo. 643, 56 S. W. 287.] Here the contract reveals on its face that it was intended the railroad embankment should be built high enough to protect plaintiffs' lands from overflow. It was for such protection alone Pratte agreed to convey the railroad right of way free of other charges therefor. Such was the entire consideration moving between the parties. Obviously a railroad embankment constructed no higher than the high-water mark when no freshet was present in Saline creek would avail nothing of value as consideration for the right of way. The contract provided Pratte should have the right to connect other levees with the railroad embankment which was to be built above the high-water mark. It is entirely clear that it was competent to show by the water marks on the trees where the high-water mark was and that defendant's agent who made the contract for it examined such trees and ascertained the fact in connection with Pratte at the time. Such is merely identifying the subject-matter of which this term of the contract relates.

It is earnestly insisted that the court erred in its instruction on the measure of damages, but the argument is without merit. It appears from the instructions that, in so far as the loss of growing crops on the land is concerned, the court told the jury plaintiffs were entitled to be compensated according to the value of the crops destroyed which were then standing in the field, and such is the correct rule on the subject. [See Pace v. St. Louis, etc. R. Co., 174 Mo. App. 227, 156 S. W. 746; Hunt v. St. Louis, etc. R. Co., 126 Mo. App. 261, 103 S. W. 133; Carter v. Wabash R. Co., 128 Mo. App. 57, 106 S. W. 611.]

The evidence reveals that certain top soil was washed away from a goodly portion of the cultivated

land and that such caused its value to depreciate. As to this the court informed the jury that the damage should be determined by ascertaining the difference in value of the land before and after the injury. Such is the correct rule of damages on this question, for the injury thus suffered is to the inheritance. [See Wiggins v. St. Louis, Memphis, etc. R. Co., 119 Mo. App. 492, 95 S. W. 311; White v. Stoner, 18 Mo. App. 540; Carter v. Wabash R. Co., 128 Mo. App. 57, 106 S. W. 611; Gates v. Chicago & A. R. Co., 44 Mo. App. 488, 495.]

It appears that defendant had constructed a right of way fence of posts and wire along on Pratte's land but designed to inclose its railroad right of way and sever it from the farm. The inundation of the lands resulting from the overflow of Saline creek and because defendant failed to construct the embankment above high-water mark dislodged this fence from its position and deposited it in the fields. When the flood abated, Pratte went about clearing his field of debris and encountered this fence rolled up and tangled together. He employed labor and removed it from the field and reset it in position, but omitted to first give notice to defendant to do so. This proceeding entailed an expense of $260, and plaintiff was permitted to recover from defendant therefor. In connection with that matter, the court gave instruction number 3a, as follows:

"The court instructs the jury that, if your finding be for plaintiffs, you will in fixing the damages, if any, which accrued to the fence alleged to have been torn away, allow to plaintiff the fair and reasonable worth and value, at the time and place of the work and labor expended in removing said fence from the place to which it had been carried by said flood, and of repairing and re-building said fence, at the original location."

It is argued that this was error. The argument concerning this matter proceeds on the theory that plaintiff was permitted to recover the value of the fence so washed away as if the fence belonged to him. Obviously nothing like this appears in the record and the entire argument in the brief concerning it is wholly beside the case. From a reading of the instruction above copied, it appears plaintiff was permitted to recover no more than the fair and reasonable value at the time and place of the work and labor expended in removing the fence from the place in the field to which it had been carried by the flood and of repairing and rebuilding it at the point of original location. Obviously it was plaintiff's duty to mitigate the damages, if within his power to do so. Had the fence remained in the field, his premises and other crops would have been exposed to incursion of cattle from without and he be denied the use of the land whereon the fence lay entangled with debris. There is no suggestion in the briefs of an exorbitant charge concerning this matter and no one can doubt the duty of defendant to replace the fence after it was washed away. We believe it was well enough to permit plaintiff to recover in this suit for the amount he expended in thus removing the fence from his land and replacing it in its proper position, and especially is this true when it is remembered that the law devolved the duty upon plaintiff to act promptly with a view of mitigating the damage which might ensue for defendant's benefit. But, in any view of the case, as the fence was reconstructed where the railroad fencing statute required defendant to erect and maintain it, and as there is no suggestion that the charge therefor was unreasonable on the part of plaintiff, we believe that no possible error affecting the merits of the action against defendant can be predicated upon this matter. It is only for errors materially affecting the merits of the case, against the substantial rights of an appellant, that judgments

should be reversed on appeal under our statute. [See
Shinn v. United Rys. Co., 248 Mo. 173, 154 S. W. 103.]

There are several arguments put forward in the
brief, but we regard all of them that merit discussion
as fully answered by what has been said. We have
examined the record with care and considered all of the
points made, but see no reversible error therein. The
case was well instructed by the court and no error
appears in refusing instructions requested by defend-
ant.

The judgment should be affirmed. It is so or-
dered. *Reynolds, P. J.,* and *Allen, J.,* concur.